U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

OCT 15 2015

TONY R. MOORE CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

MORRIS DORSEY (#265634)                DOCKET NO. 15-CV-1703; SEC. P

VERSUS                                 JUDGE DRELL

CORRECTIONS CORPORATION OF             MAGISTRATE JUDGE KIRK
AMERICA, ET AL.

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Morris Dorsey filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 15, 2015. [Doc. #1] He filed a motion to proceed in forma pauperis, which was granted on July 13, 2015. [Doc. #4] Plaintiff is an inmate in the custody of the Louisiana Department of Corrections and is incarcerated at Winn Correctional Center (WNC) in Winnfield, Louisiana. Plaintiff complains that he has been deprived of adequate medical care. He names as defendants Daniel Marr and Corrections Corporation of America (CCA).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

*Factual Allegations*

Plaintiff alleges that, on August 11, 2014, he suffered a stroke and was transported by ambulance to the Winn Parish Medical Center emergency room. [Doc. #1, p.3] He claims that he was informed that he had suffered a stroke. Upon his return to WNC, he was issued walking canes and told to lie down in his unit. [Doc.

#1, p.3]

According to the responses to Plaintiff's administrative grievance, he was evaluated by Dr. Singleton on August 11, 2014, who noted hypertension, poor control of coronary artery disease, and right side paresthesia that began the prior evening. [Doc. #1, p.7] Plaintiff was transported to Winn Parish Medical Center. He returned in stable condition, exhibiting no right-sided weakness. He ambulated with an even and steady gait. He could raise his arms above his head, and his grip was strong. His blood pressure was elevated, and he received an evening dose of clonidine and metroprotel. On August 13, 2014, Plaintiff was evaluated by Dr. Singleton. The doctor noted that the discharge paperwork from the hospital listed hypertension as diagnosis. Plaintiff informed Singleton that a CT was done at the hospital, so records were requested. [Doc. #1, p.7] On August 15, 2014, Plaintiff was seen by Dr. Singleton for a follow-up visit. Plaintiff had missed his morning clonidine medication. He had no chest pain or shortness of breath, and there was no change in neurological status. On August 21, 2014, Plaintiff was examined by Nurse Smith via medical emergency. He complained on numbness on one side. There were no neurological changes noted, and no acute distress. [Doc. #1, p.7] WNC received medical records from the Winn Parish hospital on September 2, 2014. **The CT scan showed no acute intracranial hemorrhage.** [Doc. #1, p.7] Plaintiff appealed the response to his

grievance because he maintains that the doctor at the hospital told him he had a stroke. [Doc. #1, p.7] At the second step, the appeal was denied, and the medial records and diagnoses were confirmed.

Plaintiff complains that he continues to experience numbness on his right side. He claims that he has fallen from being unable to properly grip his cane, which resulted in abrasions and scars. He states that he suffers from short-term memory loss. [Doc. #1, p.3]

Plaintiff states that Defendant CCA has in place a policy "to prevent proper medical treatment for inmates due to cost." He alleges that Defendant Marr has shown deliberate indifference to his medical care by not having Plaintiff evaluated by a neurologist. Plaintiff concludes that Marr's decision is based on CCA's policy and cost considerations. [Doc. #1, p.3] Plaintiff seeks monetary compensation and an order that he receive an immediate neurological evaluation and treatment.

Plaintiff was instructed to amend his complaint to state whether he sought additional medical care after August 21, 2014. If so, he was to list each date on which he requested medical treatment; what complaints or symptoms he was experiencing each time he requested medical care; whether his requests were completely ignored, or whether he was seen by the medical staff; what treatment, if any, he received each time he sought medical care; and what injury he believes he has suffered. Plaintiff

3

responded that he does not know any dates on which he sought care. He did not state whether he sought care after August 21, 2014, what symptoms he was experiencing, whether he was examined, what treatment he received, or what injury he suffered.

### Law and Analysis

Medical care claims when asserted by convicted prisoners, like Plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. Wilson v. Seiter, 501 U.S. 294 (1991).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino, 239 F.3d at 756 (citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir.1985)). Disagreement with diagnosis or treatment cannot support a claim of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

4

Plaintiff clearly disagrees with the diagnosis. He believes that he had a stroke, but the medical records indicate that he did not. Moreover, Plaintiff has not described any incident where he sought, but was denied medical treatment. He may have disagreed with the treatment he received, but such a claim does not amount to deliberate indifference. He was transported to the hospital, underwent diagnostic testing, and received follow-up care at WNC. When asked whether he sought care after August 21, 2014, he responded that he did not know any particular date that he sought care. He did not describe any incidents where he sought care, what complaints or symptoms he was experiencing, whether he received treatment, or what injury he believes he has suffered. His complaint that Dr. Singleton is not a neurologist does not give rise to a deprivation of medical care claim. Plaintiff has not provided facts indicating that Defendant Marr was deliberately indifferent to his medical needs.

Additionally, Plaintiff's claim that he is being denied care because of cost considerations is conclusory. First, he has not presented factual allegations indicating that he was denied medical care at all. Moreover, he has only presented his conclusion that he was not referred to a neurologist because of cost. He has no facts to support that conclusory allegation. A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than providing the court with labels and conclusions or a formulaic

5

recitation of the elements of a cause of action. See <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)(quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). He must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See <u>Schultea v. Wood</u>, 47 F.3d 1427, 1433 (5th Cir. 1995); <u>see also</u> <u>Sias v. Louisiana</u> 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); <u>Elliott v. Perez</u>, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. (citations omitted)).

## *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

## *Objections*

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as**

supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this _____ day of October, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE